**VAMARIE, INC., Relator,**

v.

**T. Armour BALL, Judge, Probate Court No. 1 of Bexar County, Respondent.**

No. 04–90–00267–CV.

Court of Appeals of Texas, San Antonio.

July 12, 1990.

**750**

Seagal V. Wheatley, Donald Philbin, Jr., Don Perry, Oppenheimer, Rosenberg, Kelleher & Wheatley, Craig L. Austin, San Antonio, for relator.

Fred Jones, John E. Clark, Arthur Troilo, Jr., Arthur Troilo, III, Sawtelle, Goode, Robinson & Troilo, Lloyd Garza, City Atty., San Antonio, for respondent.

Before CADENA, C.J., and PEEPLES and BIERY, JJ.

## ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

PER CURIAM.

This original mandamus proceeding involves three condemnation cases on file in Probate Court No. 1 of Bexar County.[1]

In each of the three cases, Judge T. Armour Ball, respondent, found that the City of San Antonio, which is the real party in interest, had complied with the prerequisites of law, entitling the City to take possession of the condemned property in furtherance of its development of the Applewhite Water Supply Project. Relator Vamarie, Inc., whose oil and gas lease is partially encompassed by the condemned property, urges that it is entitled to mandamus relief to have the writs of possession declared void and to have the respective orders[2] of Judge Ball vacated, because the

---

1. The three condemnation cases which are the subject of these proceedings are Cause No. 90–ED–0012, *The City of San Antonio v. John H. Small, et al.*; Cause No. 90–ED–0013, *The City of San Antonio v. Martha Jane Walsh, et al.;* and Cause No. 90–ED–0014, *The City of San Antonio v. Mary Louise Walsh, et al.,* involving, respectively, Parcels 4297–2; 4297–3A, –3B, and –3C; and 4297–4A and –4B, encompassing, respectively, 277.14 acres; 53.064 acres; and 260.583 acres in southwest Bexar County. These parcels are part of a 1,559.9–acre tract, commonly known as a portion of the Walsh Ranch, which is encumbered by an oil and gas lease acquired by Vamarie, Inc., on August 15, 1987. While the defendants in each of these cases have filed a collective brief in support of the petition for writ of mandamus, only Vamarie, Inc. appears as relator in challenging the judicial actions of Judge Ball, which are comprised of three separate orders in the respective causes, each of

which was signed on April 26, 1990, and each of which ordered deposit by the City of the sum awarded as damages for condemnation, as well as issuance to the City of a writ of possession to the property.

2. In his orders signed on April 26, 1990, Judge Ball approved the issuance of writs of possession in each of the three condemnation cases, but withheld delivery of the writs until he considered Vamarie's Pleas to the Jurisdiction and Motions to Dismiss and Deny Possession. On May 21, 1990, following a hearing, Judge Ball denied the respective pleas to the jurisdiction and motions to dismiss and deny possession, and thereafter, he delivered the orders approving the issuance of the writs of possession. The three orders reflecting these rulings were signed on May 22, 1990, and it is these orders which relator also seeks to set aside.

subject judicial proceedings were predicated upon violations of the Texas Open Meetings Act, TEX.REV.CIV.STAT.ANN. art. 6252–17, § 3A (Vernon Supp.1990). For the reasons announced hereinafter, we agree with relator and conditionally grant the writ of mandamus against Judge Ball.

Relator's contention that the Open Meetings Act was violated centers on two main arguments, both of which are concerned with the sufficiency of notice in advance of the San Antonio City Council meeting of February 15, 1990. These arguments are that (1) the "subject" of discussion, as outlined on the council's posted agenda, was defective, particularly in the description of the real property proposed for condemnation, and that (2) the notice of the meeting itself was not in "exact and literal compliance" with the requirements of the Texas Open Meetings Act.

■ With respect to relator's first argument, Vamarie contends that the following notice, which appeared as City Council agenda item 48 in advance of the council meeting of February 15, 1990, was insufficient to place it, other property owners, or those with an interest in the subject property, on notice of the condemnation proceedings:

> 48. An Ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.

Vamarie asserts that section 3A(a) of the Open Meetings Act requires that "[w]ritten notice of the date, hour, place, and *subject* of each meeting held by a governmental body shall be given before the meeting as prescribed by this section." TEX.REV. CIV.STAT.ANN. art. 6252–17, § 3A(a) (Vernon Supp.1990) (emphasis supplied). Vamarie argues that there was no further detail in any exhibit attached to the notice which described the property to be condemned; there was no reference to other sources where the property could be identified; there was no description of the estate or estates to be condemned; and there was no description of whether the 'certain property' was all, or only part, of the surface or mineral estate.

The City points out that relator has failed to cite a single authority for the proposition that the subject of this notice is insufficient, and that even the surface estate owners' attorney concurred that there was no Texas case which had interpreted the Act's provision to require the same descriptive specificity in an Open Meetings' notice regarding real property as is necessary in an instrument which actually conveys the property. The City cites a pre-Open Meetings Act case, *McCombs v. Dallas County*, 136 S.W.2d 975 (Tex.Civ.App.—Dallas), *writ ref'd*, 135 Tex. 272, 140 S.W.2d 1109 (1940), which defined "subject"

> ... to indicate the chief thing to which legislation relates, ... The 'subject' of an act is the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back they will lead the mind to the subject as the generic head.

*Id.* at 982. We observe that the "chief thing" the City Council was to consider at its meeting, regarding item 48, was (1) an ordinance (2) determining the necessity for and authorizing the condemnation of certain property (3) in County Blocks 4180, 4181, 4188 and 4297 (4) in Southwest Bexar County (5) for the construction of the Applewhite Water Supply Project. We find no merit in relator's argument that this notice was insufficient as to the property description and concur with the City that relator's proposal for a different and more stringent standard should be addressed to the Legislature.

■ The second and more problematical of relator's complaints focuses on the notice of the meeting itself and whether it was in "exact and literal compliance" with the Act. Subsections 3A(c) and (h) provide that:

> (c) A city governmental body shall have a notice [of the public meeting] posted on

a bulletin board to be located at a place convenient to the public *in the city hall.*

. . . . .

(h) Notice of a meeting must be posted *in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting....*

TEX.REV.CIV.STAT.ANN. art. 6252–17, § 3A(c), (h) (Vernon Supp.1990) (emphasis supplied). Relator contends that the City "stipulated" to violating the Open Meetings Act and that Vamarie is, therefore, entitled to the requested mandamus relief. The actual stipulation at issue occurred during a recess in the deposition of a City employee and was set forth in the following language:

> It is stipulated by and between the parties that the agenda of the city council meeting of February 15th, 1990 was posted on the interior of the City Hall in the first floor lobby at approximately 12:22 p.m. on February 12th, 1990, but was not continuously available to the public for a period of 72 hours prior to the council's meeting because of the locking of the building at night.

We view the stipulation as one of facts, not as a stipulation to a violation. The City contends that subsections 3A(c) and 3A(h) merely provide two methods of complying with the notice requirement and that the City complied with both—by posting a notice inside City Hall, as well as on an outside kiosk just east of City Hall. Vamarie urges that such a reading of the statute is untenable, and counters by citing the 1975 amendment of the Act which added the requirement that the notice be "readily accessible to the general public" and urging that subsections 3A(c) and 3A(h) must be construed together, that is, that the "notice" referred to under subsection 3A(h) is not some separate notice, but the same "notice" referred to in subsection 3A(c), which, therefore, requires the notice "posted on a bulletin board to be located at a place convenient to the public in the city hall" to be so posted "in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting." The City contended in oral argument that the length of time required for the notice to be posted in the City Hall under section 3A(c) would be a "reasonable" amount of time. On this point, we agree with relator; otherwise, meaningful access to the notice in the City Hall would effectively be denied during those evenings and weekends when the facility is locked and inaccessible. To accept the City's interpretation would be to revert to the "substantial compliance" standard which has been rejected by the Supreme Court of Texas, most recently in *Acker v. Texas Water Commission,* 790 S.W.2d 299 (Tex.1990). It is not sufficient that notice was also posted in a kiosk outside city hall which is accessible to the public 24 hours a day, and particularly where there is no evidence in the record before us that the kiosk was in any manner designated as a posting site for official notices.[3] At any rate, a posting, such as on the outdoor City

---

3. To accept the City's interpretation of the Act would permit compliance with the Act by posting notice, for example, in the City Hall for one hour before the meeting, plus 72 hours in some other public place.

Counsel for the Walsh family has also challenged the City's contention that it may maintain an optional posting site, without ever formally designating to the public the location of that site. His observation that the statutory intent is frustrated under the City's present posting policy is aptly set forth in the following passage from his brief in support of the petition for writ of mandamus:

> The central vice in the bifurcated notice theory is that if the City can get by with posting its agenda in the kiosk, it can get by with posting it in some other non-statutory location. City

Hall Annex? City Water Board? Or a bridge railing where Applewhite Road crosses the Medina River?

Interpreting the statute so as not to require any specific location for the "optional" posting leaves the City with its choice of all locations. The agenda can then be hidden in some obscure, but logical, place and the statute [is] satisfied. In realty [sic], this interpretation opens a loophole which eviscerates the statute.

Permitting the City its choice of location reintroduces the concept of "substantial compliance" into the Open Meetings Act. The factual adequacy of each nonstatutory place of posting will have to be litigated on a case-by-case basis. Some locations may give fair notice to the public. Others obviously will not.

Hall kiosk, is not in "exact and literal compliance" with the Act as required by a line of recent decisions of the Supreme Court of Texas, culminating with *Acker*, where the supreme court noted that:

> The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, we have demanded exact and literal compliance with the terms of this statute.

790 S.W.2d at 300, *citing Smith County v. Thornton*, 726 S.W.2d 2 (Tex.1986).[4] We are not persuaded by the City's arguments that the cost of keeping the City Hall bulletin board accessible to the public to comply with the Open Meetings Act is prohibitive.[5] Accordingly, we find that the posting procedure utilized by the City of San Antonio was not in "exact and literal compliance" with the notice provisions of the Texas Open Meetings Act, and, therefore, the actions of the City Council predicated upon that notice cannot stand. By extension, we find that the orders signed by Judge Ball permitting condemnation of the subject property, as well as the writs of possession issued pursuant thereto, must be vacated as well.

Finally, in a supplemental prayer for relief, filed with permission of this court subsequent to oral argument of the case, relator has requested the award of attorneys' fees, appraisers' fees, and other expenses incurred by Vamarie, pursuant to TEX.PROP.CODE ANN. § 21.019(b) (Vernon Supp.1990). As to this request, we agree with the City of San Antonio that such fees and other expenses, pursuant to section 21.019(b), are only proper where the condemnor moves to dismiss the proceedings. *See City of Wharton v. Stavena*, 771 S.W.2d 594 (Tex.App.—Corpus Christi 1989, writ denied). We do not reach the propriety of an appropriate award pursuant to section 21.019(c) of the Code, deferring that instead to the trial court, as the statute provides.

Having found a failure of "exact and literal compliance" by the City of San Antonio with subsections 3A(c) and 3A(h) of the Open Meetings Act, we conditionally grant the writ of mandamus against respondent. We are confident respondent will vacate the orders, which erroneously found that the City had satisfied all prerequisites to condemnation, as well as recall issuance of the writs of possession to each of the subject properties in Cause No. 90–ED–0012, –0013, and –0014, on file in Probate Court No. 1 of Bexar County. The writ of mandamus will issue only in the event respondent fails to act in accordance with this opinion.

---

4. Chief Justice Cadena of this court in a 1986 opinion wrote that:

[I]t can be argued that the [Smith County v.] *Thornton* holding is based on the conclusion that the amendatory actions of the Legislature show an intent to strengthen the notice requirements generally to insure that the purpose of the statute is achieved and the public will be informed concerning the transaction of public business. The use of vague language, which must be interpreted and then reinforced by resort to the substantial compliance rule in order to avoid a finding of illegal conduct, does not tend to promote the achievement of the statutory purpose, since it requires the public to guess as to the meaning of the language. There is no reason to believe that the firmament will not remain securely in place if literal compliance with notice provisions is required.

*River Road Neighborhood Ass'n v. South Texas Sports*, 720 S.W.2d 551, 556 (Tex.App.—San Antonio 1986, writ dism'd).

5. In fact, there is evidence in the record before us that City Hall remains open after regular business hours when a late-night official City meeting is in progress, and that the City already incurs private security costs on such occasions.