CITY OF SAN ANTONIO, Relator,

v.

FOURTH COURT OF APPEALS, Respondent.

No. D–0119.

Supreme Court of Texas.

Sept. 11, 1991.

John E. Clark, Fred R. Jones, R. Gaines Griffin, Lloyd Garza, San Antonio, for relator.

Seagal V. Wheatley, Craig L. Austin, Dan C. Perry, Donald R. Philbin, Jr., San Antonio, for respondent.

## OPINION

PHILLIPS, Chief Justice.

This mandamus proceeding arises out of three related condemnation cases instituted by the City of San Antonio pursuant to a City condemnation ordinance. The issue before us is whether the City complied with the notice provisions of the Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17, § 3A (Vernon Supp.1991), prior to the meeting at which the City Council adopted the condemnation ordinance. The court of appeals held that the City had failed to comply with the Open Meetings Act and conditionally granted a writ of mandamus ordering the district court to declare the writs of possession issued to the City void. 793 S.W.2d 749. Because we find that the City's notice satisfied the Open Meetings Act, we conditionally grant the writ of mandamus ordering the court of appeals to vacate its judgment.

### Facts

On February 15, 1990, the City Council of San Antonio adopted a specific condemnation ordinance condemning several tracts of land in southwest Bexar County for the construction of a reservoir for the Applewhite Water Supply Project.[1] On the authority of this ordinance, the City subse-

---

1. The ordinance condemned 15 separate tracts of land, encompassing a total of 930.315 acres. Six of these tracts, with a total area of 590.821 acres, are the subject of the condemnation proceedings that form the basis for this mandamus action. These tracts are part of a larger, 1,559.9–acre tract commonly known as the Walsh Ranch.

quently filed these three condemnation proceedings against the owners of several of the condemned tracts. Compensation was fixed by special commissioners after a three-day hearing, and the City sought writs of possession entitling it to take possession of the condemned property.

Vamarie, Inc., the real party in interest in this proceeding, holds an oil and gas lease on the land that is the subject of these proceedings.[2] Before the district court issued the writs of possession, Vamarie moved to dismiss the condemnation cases, arguing that the City's ordinance was void because the notice of the meeting at which the ordinance was adopted violated the Open Meetings Act. First, Vamarie argued that the notice of the meeting was not sufficiently specific in its description of the condemnation ordinance to adequately inform the public of the "subject" of the meeting, as required by section 3A(a) of the Act. Tex.Rev.Civ.Stat.Ann. art. 6252–17, § 3A(a) (Vernon Supp.1991). Second, Vamarie argued that the time and place of the posting of the notice did not comply with the requirements of sections 3A(c) and 3A(h) of the Act. *Id.* §§ 3A(c), 3A(h).

The district court denied Vamarie's motion and issued the writs of possession to the City. Vamarie then sought mandamus relief from the court of appeals. The court of appeals held that the notice complied with subsection (a)'s subject matter requirement but that the manner of its posting violated the time and place requirements of subsections (c) and (h). 793 S.W.2d at 751, 753. The court of appeals therefore conditionally granted the writ of mandamus. The City of San Antonio now seeks mandamus relief from this court, asking us to vacate the court of appeals' judgment.

## Standard of Review

■ Any interested person may commence a mandamus action to stop, prevent, or reverse violations of the Texas Open Meetings Act. Tex.Rev.Civ.Stat.Ann. art. 6252–17, § 3(a) (Vernon Supp.1991). In an original mandamus proceeding, the question before the appellate court is whether the trial court abused its discretion or violated a duty imposed by law. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989). The appellate court does not exercise any independent discretion in granting or denying a mandamus request against a trial court. In reviewing the court of appeals' decision to grant mandamus, therefore, this court must determine for itself whether the trial court abused its discretion. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).

## Sufficiency of the Notice

■ Section 3A of the Open Meetings Act establishes notice requirements for meetings of governmental bodies. Subsection (a) sets forth the general rule:

(a) Written notice of the date, hour, place, and subject of each meeting held by a governmental body shall be given before the meeting as prescribed by this section.

Tex.Rev.Civ.Stat.Ann. art. 6252–17, § 3A(a) (Vernon Supp.1991).

Prior to the February 15, 1990 City Council meeting, the City posted the agenda for the meeting on a bulletin board inside City Hall and also on a kiosk outside the main entrance to City Hall. This agenda listed the condemnation ordinance as follows:

48. An Ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.

Vamarie argues that this notice does not comply with the requirements of subsection (a) because it does not describe the condemnation ordinance, and in particular the land to be condemned by that ordinance, in sufficient detail. Vamarie contends that the notice does not give adequate information to enable a reader to determine whether the City was planning to condemn her land and that therefore there was a failure to

---

**2.** Vamarie owns an oil and gas lease covering the entire 1,559.9–acre Walsh Ranch, including the 590.821 acres that are the subject of these proceedings.

fully disclose the subject matter of the meeting, as required by subsection (a). *Cox Enterprises v. Board of Trustees*, 706 S.W.2d 956, 960 (Tex.1986).

On several occasions, this court has considered the extent of the notice required by the word "subject" in subsection (a). In *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex. 1975), the challenged notice stated that the Board of Directors of the Lower Colorado River Authority would consider "the ratification of the prior action of the Board taken on October 19, 1972, in response to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas." Although conceding that the notice was "not as clear as it might be," we held that it complied with the Act because "it would alert a reader to the fact that some action would be considered with respect to charges for electric power sold in San Marcos." *Id.*

Two years later, in *Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d 675 (Tex.1977), we considered the notice for a meeting of the Board of Directors of the Texas Turnpike Authority at which a resolution was passed to enlarge the Dallas–Fort Worth Turnpike. The notice stated that the Board would "[c]onsider request ... to determine feasibility of a bond issue to expand and enlarge the Dallas–Fort Worth Turnpike." *Id.* at 676. The City asserted that the notice should have pointed out that this course of action was contrary to the Board's prior declaration of intention to make the Turnpike a free road. *Id.* We upheld the notice, pointing out that "[t]here is no necessity to post copies of proposed resolutions or to state all of the consequences which may necessarily flow from the consideration of the subject stated." *Id.*

In our most recent opinion in this area, *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d 956 (Tex.1986), we finally held a notice inadequate. There, the board of trustees of a school district posted notices of their closed executive sessions that listed only general topics such as "personnel," "litigation," and "real estate mat-

ters." After holding that the notice provisions of the Act applied to closed as well as to public sessions, we considered the sufficiency of these notices. We concluded that "[t]he advance notice given under section 3A(a) should specifically disclose the subjects to be considered at the upcoming meeting," *id.* at 959, noting that "[t]he Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies." *Id.* at 960. We thus held that "[t]he Board did not provide full and adequate notice, particularly where the subject slated for discussion was one of special interest to the public." *Id.* at 959.

■ Our decisions in the above cases were clearly based on our understanding of the purposes of the Open Meetings Act, which are to enable public access to and to increase public knowledge of government decisionmaking. The Open Meetings Act is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide "openness at every stage of [a governmental body's] deliberations." *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990). In reviewing notices under the Act, therefore, we must ensure that these core purposes are served. However, we need not go further and inquire into whether a notice was tailored to reach those specific individuals whose private interests are most likely to be affected by the proposed government action, as Vamarie would have us do. The intended beneficiaries of the Act are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public. If a "reader" is given notice, the requirement of the Act is satisfied and its purpose served.

In the present case, we hold that the City's notice as to the subject matter of the ordinance was sufficient to ensure that a reader was given adequate notice of the proposed governmental action. The notice informed readers (1) that the City Council would be considering a condemnation ordinance, (2) that the land subject to condemnation was located in four county blocks in southwest Bexar County, and (3) that the

purpose of the proposed action was to construct the Applewhite Water Supply Project. Any readers interested in that project had more than sufficient notice that the City Council would be considering action relating to it. And readers who did own property in those blocks were on notice of some risk that their land might be condemned. That is all the Act requires.

Clearly, the City could have given more particularized notice. For example, the notice could have said:

> An ordinance determining the necessity for and authorizing the condemnation of 930.315 acres in Southwest Bexar County, being parts of parcel 1 of County Block 4180, parts of parcels 2 and 4 of County Block 4181C, parts of parcel 1 of County Block 4188, and parts of P–11, P–11A, P–12, P–13, P–13A, P–13B, P–13C, P–14, and P–14A of County Block 4297, for the construction of the Applewhite Water Supply Project.

However, even this more specific description would not ensure that all citizens owning land to be condemned by the proposed ordinance would receive notice sufficient to inform them of this fact. Only a complete metes and bounds description of the land to be condemned would satisfy this standard. The agenda for the February 15, 1990 City Council meeting contained 55 items, of which the proposed condemnation ordinance was number 48. (See Appendix.) The level of detail required to give all citizens directly affected by the 55 proposed City actions specific notice as to the impact on them individually would be staggering. Far from serving the purposes of the Act, this degree of specificity would so overwhelm readers that it would prove even less informative than the current notice. Thus, we hold that, in this case, the City's notice, although insufficient to inform the individual landowners that their particular tracts of land were the subject of the proposed condemnation ordinance, was sufficient to meet the "subject" requirement of subsection (a) of section 3A of the Open Meetings Act.

### Posting Requirements

■ Vamarie also challenges the manner in which the City posted its notice, arguing that the time and place of the posting did not comply with subsections (c) and (h) of section 3A of the Open Meetings Act. Subsection (c) provides:

> (c) A city governmental body shall have a notice posted on a bulletin board to be located at a place convenient to the public in the city hall.

Tex.Rev.Civ.Stat.Ann. art. 6252–17, § 3A(c) (Vernon Supp.1991). Subsection (h) provides, in pertinent part:

> (h) Notice of a meeting must be posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting.

*Id.* § 3A(h).

The City posted the agenda for the February 15, 1990 City Council meeting on a bulletin board inside the City Hall on February 12, 1990, more than 72 hours prior to the meeting. Since the City Hall building is locked each night, this notice was not continuously available to the public between the time it was posted and the time of the meeting. At about the same time as the bulletin board posting, the agenda was also posted on a kiosk located on the City Hall grounds directly in front of the main or east entrance to the building. This kiosk (see photograph below) is a four-sided structure about the same size and shape as an old-fashioned telephone booth. Notices are posted behind glass panes that cover the four sides of the structure, each page of a notice posted separately. Although the kiosk itself is unlighted, there are several street lights near the front entrance to the City Hall, which is located on a major downtown street.

The City contends that subsections (c) and (h) were satisfied by this double posting. It maintains that the requirement of posting notice "at a place convenient to the public" inside the City Hall was satisfied by the bulletin board posting, while the separate requirement of posting notice in "a place readily accessible to the general public at all times for at least 72 hours" before the scheduled meeting was satisfied by the kiosk posting.

The court of appeals disagreed, holding that subsections (c) and (h) of section 3A must be read together to require a single notice and to prescribe an exclusive place to post such notice, i.e., inside the City Hall. 793 S.W.2d at 752. Thus, the court interpreted (c) and (h) to require the City to post one notice inside the City Hall at least 72 hours before the scheduled meeting time and then to keep the City Hall open to the public at all times. Since the City conceded that the City Hall was not open to the public at all times during the 72-hour period before the February 15 meeting, the court of appeals held that the City had failed to comply with the Act. *Id.* at 753. The court of appeals believed that its reading of the Act was "exact and literal." *See Acker*, 790 S.W.2d at 300.

■ We disagree. A literal reading of the statute compels the opposite result. Subsection (h) provides: *"Notice of a meeting* must be posted *in a place* readily accessible to the general public at all times...."* No "place" is specified. "Notice of a meeting" is phrased in nonrestrictive terms, i.e., the "notice" described is not restricted to be the same notice as that mentioned in subsection (c) (as it might be if the statute read: *"The* notice of a meeting"). The legislature could easily have written subsection (h) to relate back to subsection (c), but it did not do so. Therefore, the legislative scheme does not require a single notice that must satisfy both subsections but permits dual notice.

Vamarie, however, points out that subsection (c) does not contain a specific time requirement and subsection (h) does not contain a specific place requirement and argues that construing these provisions as separate requirements could therefore lead to abuse. For example, the Act could arguably be satisfied by a posting in the City Hall one hour before the meeting, plus a posting in an inconvenient public place far from the City Hall for 72 hours.

These concerns are groundless. Any such unreasonable postings would not comport with the purpose of the Act, that is, to assure "that the public has the opportunity to be informed concerning the transactions of public business." *Acker*, 790 S.W.2d at 300 (quoting Act of May 8, 1967, 60th Leg., R.S., ch. 271, § 7, 1967 Tex.Gen.Laws 597, 598). Thus, although subsection (c) contains no specific time requirement, any notice posted under this subsection must be posted for a sufficient period of time to ensure that the public has the opportunity to read it. Furthermore, subsection (h) specifically requires that the 72-hour posting place be "readily accessible to the general public," not in an obscure or remote location.

It is the approach urged by Vamarie and adopted by the court of appeals, rather than the City's position, which strains common sense and will more likely result in abuse. Many, if not most, cities are ill able to afford the additional security and utility costs which an "open door" policy for the nocturnally curious would require. Before we mandate such an extravagant use of public resources, we should require a clear and unequivocal expression in the statutory language that the legislature intended such a result. Absent a clear legislative directive, a statute should not be construed so as to produce an absurd or foolish result if it is reasonably susceptible of an alternative construction. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973, 983 (1982); *Stobnicki v. Textron, Inc.*, 868 F.2d 1460, 1463 (5th Cir.1989); *McKinney v. Blankenship*, 154 Tex. 632, 642, 282 S.W.2d 691, 698 (1955).

Thus, whether we rely on the plain meaning of the statute or the policy underlying it, the City's postings satisfied the requirements of subsections (c) and (h). The first notice was posted on a bulletin board inside

the City Hall more than 72 hours before the meeting, and the second notice was posted on the kiosk directly in front of the main entrance to City Hall more than 72 hours before the meeting. These twin postings made the notice readily accessible to members of the general public seeking information about City Council business at all times during the 72–hour period preceding the meeting.

### Conclusion

For the above reasons, we hold that the City fully complied with the notice requirements of the Open Meetings Act. Because the district court did not abuse its discretion in issuing the writs of possession to the City, the court of appeals erred in issuing the writ of mandamus. We therefore conditionally grant the City's petition for writ of mandamus. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). The writ will issue only if the court of appeals does not vacate its mandamus judgment.

Dissenting and concurring opinion by GONZALEZ, J.

Dissenting opinion by MAUZY, J.

Dissenting opinion by DOGGETT, J., joined by GAMMAGE, J.

# APPENDIX

*"Official Docket"*

AGENDA

CITY COUNCIL MEETING

*90 FEB 12 PM 12:18*

FEBRUARY 15, 1990

1. Invocation by Reverend Bill McFarland, Brookhill Baptist Church, and Pledge of Allegiance.

2. Approval of the Minutes of the Regular City Council Meeting of January 18, 1990, and January 25, 1990.

*2-08-03*     *RESOLUTION OF RESPECT — MILTON C. "MIKE" RANDALL*

3. 1:00 P.M. - Ceremonial Items.

4. 1:30 P.M. - A Resolution directing publication of Notice of Intention to issue City of San Antonio, Texas, Prior Lien Water System Revenue Improvement and Refunding Bonds and directing advertisement of sale in connection with said bonds and declaring an emergency.

5. 3:30 P.M. - Public Hearing and consideration of An Ordinance amending Sections 35-3262 and 35-3606(ac) of the Unified Development Code so as to require special City Council approval for petroleum bulk storage facilities; and amending Sections 35-3262 and 35-3604 so as to require special City Council approval of temporary help employment contractors excluding industrial districts.

*71089*

6. 4:00 P.M. - Boards and Commissions Work Session *(POSTPONED)*

7. 5:00 P.M. - Citizens To Be Heard.

---

## CITY HALL ACCESSIBILITY STATEMENT

This meeting site is accessible to handicapped persons. Two parking spaces for disabled persons are located near the entrance ramp on the west side of City Hall. Two additional reserved parking spaces are located on the north side of the building.

To arrange for special assistance to attend this meeting, please call the Handicapped Access Office, 299-7243. Requests for an interpreter for hearing impaired persons must be received at least 48 hours prior to this meeting.

---

DEPOSITION EXHIBIT

1

CONSENT AGENDA

### Purchase of Equipment, Supplies and Services:

8.

058   An Ordinance accepting the low bids of Firequip, Inc., and Casco Industries, Inc., to furnish the City of San Antonio Fire Department with fire hose for a total of $63,021.25.

9.

059   An Ordinance accepting the low bid of Fernandez Construction Company for roof replacement at the WIC building for a total of $9,696.63.

10.

060   An Ordinance accepting the low qualified bids of Clifford of Vermont, Inc., and King Wire and Cable Corporation to furnish the City of San Antonio Public Works Department with traffic cable for a total of $39,459.05.

11.

061   An Ordinance accepting the low bid of Hach Company to furnish the City of San Antonio Environmental Management Department with laboratory equipment for a total of approximately $3,390.

12.

062   An Ordinance accepting the low bid of Sanivac/Davis Manufacturing Company, Inc., to furnish the City of San Antonio Parks and Recreation Department with floor care equipment for a total of $4,154.78.

13.

063   An Ordinance accepting the low bid of Industrial Communications to furnish the City of San Antonio Parks & Recreation Department with VHF Radios for a total of $4,960.

14.

064   An Ordinance accepting the low bid of Excel Electrical Controls Products to furnish the City of San Antonio Aviation Department with parts for G. E. Programmable Controllers for a total of $4,262.30.

15.

065   An Ordinance accepting the proposal of Motorola to furnish the City of San Antonio Aviation Department with bidirectional amplifier and antennas for a total of $9,243.75.

16.

.084   An Ordinance accepting the proposal of Management Science America, Inc., to renew for one year the license to use Fixed Assets Accounting and Project Tracking Software at a cost of $15,880.

### Capital Improvement Projects:

17.

.085   An Ordinance authorizing the execution of a professional services contract with Gustave Heye & Associates, A.I.A Architects, for the amount of $308,595.44 to provide architectural services related to the remodeling, foundation

work, site work and construction in connection with the Municipal Courts Building and Public Inebriate Program Project.

BE 18.

**1066**

An Ordinance authorizing the execution of a construction contract with E-Z Bel Construction Co., Inc., for the amount of $193,370.00, funded with Community Development Block Grant Funds, involving the reconstruction of the street, curbs, sidewalks and driveways in connection with the Koepke Street from Pleasanton Road to South Flores Project; authorizing an additional $19,337.00 for the construction contingency and $6,146.39 for project oversight costs; and providing for payment.

BE 19.

**067**

An Ordinance authorizing the execution of a construction contract with V. K. Knowlton Paving Contractor, Inc., for the reconstruction of Sims & Gladstone from Collingsworth to IH 35; authorizing an additional $35,447.62 for the construction contingency; authorizing payment to W. F. Castella & Associates, Inc., for additional engineering fees in connection with the reconstruction of Sims & Gladstone; and providing for payment.

20.

**1068**

An Ordinance authorizing the execution of a Field Alteration No. 4 in the amount of $9,808.84 to the construction contract with V. K. Knowlton Paving Contractors, Inc., to provide for a change in the construction phasing and to provide access to Elm Creek for maintenance; authorizing an additional $70,709.00 for the construction contingency, all in connection with the Wurzbach Road from Vance Jackson to Lockhill Selma Project; and providing for payment.

21.

**1069**

An Ordinance authorizing an additional payment of $3,472.30 to CH2M Hill Central Inc., for the continuation of a study providing an analysis of existing wastewater service facilities, projections on future wastewater demand and recommendations for new and upgraded sewage collection and treatment facilities in connection with the León Creek Watershed; and providing for payment.

PULLED 22.

An Ordinance authorizing the execution of a construction contract in the amount of $299,368.00 with Utilities Consolidated, Inc., for the construction of the Ripley Area Sanitary Sewer Project; authorizing an additional $42,430.65 for the construction contingency; authorizing payment in the amount of $6,900.00 to Dannenbaum Engineering Corporation for construction supervision; and providing for payment.

E 23.

**1070**

An Ordinance authorizing the execution of Contract Amendment No. 1 to the Category 5, Manhole Rehabilitation, Contract 3, Phase B, Construction and Post Construction Phase Design Engineering Services Contract with Structural Engineering Associates, Inc., in the amount of $24,496.00, and authorizing Contract Amendment No. 1 to the Construction Management Services Contract with Pape-Dawson, Inc., and

Vickrey & Associates, Inc., a joint venture, in the amount of $15,000.00, to provide for the extension of the contract period to complete engineering inspection and post construction activities; and providing for payment.

24. An Ordinance authorizing the execution of Contract Amendment No. 1 to the Category 5, Manhole Rehabilitation, Contract 4, Construction and Post Construction Phase Design Engineering Services Contract with Structural Engineering Associates, Inc., in the amount of $70,390.00, and authorizing Contract Amendment No. 1 to the Construction Management Services Contract with Pape-Dawson, Inc., and Vickrey & Associates, Inc., a joint venture, in the amount of $49,000.00 to provide for the extension of the contract period to complete engineering inspection and post construction activities; and providing for payment.

1071

25. An Ordinance authorizing the execution of a professional services contract with Advance Consulting Engineers in the amount of $14,149.60 to provide plans, specifications and right-of-way engineering services, for the Northwest Lift Stations (Nos. 86, 107 and 143) Elimination Sanitary Sewer Project; authorizing an additional $1,415.40 for the engineering contingency and $250.00 for bid advertising; and providing for payment.

1086

26. An Ordinance authorizing the execution of a professional services contract with Civil Design Services Consulting Engineers in the amount of $15,000.00 to provide plans, specifications and right-of-way engineering services for the Northside Lift Stations (Nos. 68, 141 and 142) Elimination Sanitary Sewer Project; authorizing an additional $1,500.00 for the engineering contingency and $250.00 for bid advertising; and providing for payment.

091

27. An Ordinance accepting the low qualified of H. B. Zachry Co., in the amount of $7,397,396.91, for the Runway 3-21 Reconstruction Project at San Antonio International Airport and approving a contract; authorizing an additional $739,740.00 for construction contingencies; accepting the proposal from Raba-Kistner Consultants, Inc., in an amount not to exceed $150,000.00 for construction and materials testing; amending the contract with Day & Zimmermann, Inc. to extend the term through March, 1991, and increase the total fees payable by the amount of $534,400.00; authorizing additional engineering fees payable to Garcia & Wright Consulting Engineers, Inc., in the amount of $76,447.00; revising the budget for the project; and providing for payment.

1072

28. An Ordinance authorizing the execution of Change Order No. 12 in the amount of $123,599.29 to the construction contract with Clearwater Constructors, Inc., for various improvements to the Downtown TriParty Improvements Program; accepting payment from City Public Service in the amount of $16,578.23

PULLED

for work performed under the Clearwater Contract; appropriating $62,605.05 from 1985 General Obligation Street Bond Funds into the construction contract fund; appropriating and transferring funds; and providing for payment.

Purchase, Sale or Lease of Real Property:

29.

1073

An Ordinance consenting to an Assignment of Lease from David Harrison, a sole proprietorship, doing business as La Villita Deli to DHBO, Inc., a Texas Corporation, concerning lease space of a portion of Building 16 (McAllister Building) in La Villita.

30.

074

An Ordinance authorizing the expenditure of the sum of $1,900.00 out of General Obligation Bonds to acquire title to two parcels in connection with the Driftwood Drainage Project #39 B-F South; accepting the dedication of title to three parcels and paying for title charges in connection with the Lanark Drainage Project #92A.

31.

075

An Ordinance authorizing payment in the amount of $2,826.00 for title charges involving the Hi-Lions Drainage Project #80, Driftwood Drainage Project #39 B-F South; Elmendorf Street Drainage Project #38, Phase II, Teresa Street - I.H. 35 to Pleasanton Road, Fredericksburg Road - Five Points to Woodlawn (San Pedro Creek Channel Improvement), and appraisal fees involving the Driftwood Drainage Project #39 B-F South; and appropriating funds.

32.

1076

An Ordinance authorizing a one year Lease Agreement with Louis S. Y. Shiao, Ph.D., doing business as Oriental Gift Shop, for the lease of 482 square feet out of the 1,232 square feet previously leased by Delta Airlines in the Riverbend Parking Garage for an annual rental of $7,230.00.

33.

1077

An Ordinance declaring surplus, the real estate and improvements at 224 Lyman, more specifically, Lot 7, Block 4, County Block 5843, Larkwood Subdivision, City of Terrell Hills, Bexar County, Texas and authorizing the City Manager or any Assistant City Manager to sell said property at public bid pursuant to existing law with a suggested minimum sale price to be set at no less than $34,000 and to include expenses for appraisal, recording and advertising costs and any other costs relative to the sale of this property.

34.

078

An Ordinance amending Ordinance 68831 to reauthorize the City staff to advertise the remaining portion of Lot 14, NCB 165, Bexar County, Texas, for sale by public bids.

35.

08-04

A Resolution authorizing the City Water Board to oversize approximately four hundred (400) feet of developer customer border main from six (6) inches to eight (8) inches on Heuermann Road.

**Miscellaneous:**

36. An Ordinance authorizing the expenditure of $39,500.00 to allow the San Antonio Convention & Visitors Bureau to conduct a sales presentation/reception during the week of March 19-23, 1990, in New York City to promote San Antonio as a convention, visitor and motion picture destination.

71079

37. An Ordinance establishing the HUD Youth Sports Program; creating the project budget; authorizing the execution of a sub-grantee contract with the San Antonio Housing Authority (SAHA); and authorizing expenditures to SAHA.

71080

38. An Ordinance authorizing the acceptance of a grant of $305,950 from the U. S. Department of Health and Human Services to fund a Maternal Substance Abuse Project in the San Antonio Health Department; establishing a fund; adopting a budget; and authorizing personnel positions.

71081

PULLED

An Ordinance amending City Code Chapter 16, "Licenses and Business Regulations," Article VI, "Itinerant Vendors," Sec. 16-173, "Exceptions," to except vendors participating in conventions and trade shows, selling to only registered delegates and not to the general public.

40. An Ordinance authorizing the payment of the National Association of Counties annual dues in the amount of $3,200.00 from the 1989-90 JTPA Title II A Grant Funds.

71082

41A. An Ordinance authorizing the application for and acceptance of Grant Awards from the Texas Commission on the Arts, Texas Committee on the Humanities, Mid-America Arts Alliance, The National Endowment for the Arts, and The National Performance Network; authorizing the execution of contracts and adjustments to the budget in accordance with funding levels and project costs; and providing for temporary loans from the General Fund pending collection of Grants Awarded.

71092

41B. An Ordinance authorizing the City Manager to execute contracts for the 1989-90 Jazz Festival.

71093

41C. An Ordinance authorizing the Carver Community Cultural Center to conduct the African Carribbean Festival in October 1990, with public and private contributions received by the Carver Development Board.

71094

42. An Ordinance authorizing the execution of a contract with Tillinghast Management Consultants in an amount not to exceed $32,000.00 for risk management consulting services involving the selection of risk control and risk financing programs in connection with the Multi-Purpose Dome Facility Project.

71095

**Street Closure:**

43. An Ordinance closing Shannon Lee Dr. from Oblate to Mountain Top on Sunday, May 6, 1990, from 11:00 a.m. to 8:00 p.m. to enable the Blessed Sacrament Church to hold their Annual

71083

**776**

Festival.

ITEMS FOR INDIVIDUAL CONSIDERATION:

PULLED 44. An Ordinance accepting the high bid(s) received in connection with City funds available for deposit in interest-bearing Certificates of Deposit.

45. An Ordinance authorizing payment of refunds to persons making a double payment, overpayment or as a result of a value change on 64 tax accounts.

7 1 0 9 6

46. An Ordinance authorizing payment in the amount of $15,000.00 in settlement of all claims of Maria M. Cardenas against the City of San Antonio.

7 1 0 9 7

47. An Ordinance authorizing payment in the amount of $25,000.00 in settlement of all claims of Eloy Jose Rodriguez against the City of San Antonio.

7 1 0 9 8

48. An Ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.

7 1 0 8 8

49. An Ordinance authorizing the payment of $20,000.00 as the City of San Antonio's contribution towards the estimated $75,000.00 cost of hiring a consultant to prepare a Financial Feasibility Study relating to the location of the Confederate Air Force International Headquarters and Museum and authorizing the Mayor and the City Manager to submit a proposal to the Confederate Air Force with regards to locating these facilities in San Antonio.

7 1 0 8 7

50. An Ordinance authorizing a parade permit for the Mardi Gras Celebration to be held Tuesday, February 27, 1990, from 6:00 p.m. to 7:00 p.m.

PULLED

51. An Ordinance refunding that portion of property taxes which are affected by the tax rollback to the 8 percent level; authorizing the expenditure of funds necessary to cover costs associated with the tax refunds; and accepting the bid of Laser Printers, Inc., in the amount of $18,725.00 to furnish the City with laser printing of tax refund material.

7 1 0 9 9

52. An Ordinance appointing Erlinda Dimas to serve on the Housing Trust Fund Board of Trustees for a term of office to expire on May 30, 1991.

7 1 1 0 0

Public Hearing for Consideration of Zoning:

53. Zoning Case No. Z90016. Request of L. Dean Chittenden for a change in zoning from "B-2" Business District to "B-3R" Restrictive Business District on Lot 18, and the northeast 40.0' of Lot 17, Block 9, NCB 15699 (12651 Nacogdoches Road). Zoning Commission recommends approval. (Council District 10)

**7 1 0 9 0**

54. Executive Session: Consultation concerning attorney-client matters (real estate, litigation, contracts, personnel and security) may be discussed. (Proposed settlement of Cause No. SA-89-CA-891, styled NBC BANK-SAN ANTONIO, NATIONAL ASSOCIATION vs. CITY OF SAN ANTONIO. *(POSTPONED)*

55. City Manager's Report.

\* \* \*

STATE OF TEXAS
COUNTY OF BEXAR  } SS.
CITY OF SAN ANTONIO                    CERTIFIED COPY

The undersigned, the City Clerk of the City of San Antonio in the State and County afore said, does by these presents certify that the attached and foregoing is a true and exemplified copy of a part of the records, papers and books in the Office of the City Clerk; and, that I am the custodian of such papers, books and records as an officer of the City of San Antonio.

Given under my hand and the official seal of the City of San Antonio, this 19th day of April, A. D. 19 90.

[SEAL]

City Clerk, City of San Antonio.

---

GONZALEZ, Justice, concurring and dissenting.

I concur with the court's conclusion that the location of notice does not violate the Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252-17, § 3A(c) (Vernon Supp.1991). I dissent from part of the court's opinion and its judgment, however, because in my opinion the notice itself does not give fair notice required by the act.

The double posting (one in city hall and one on the kiosk) satisfies subsections 3A(c) and (h) of the act. Subsection (c) requires posting in the city hall "at a place convenient to the public." The only reasonable construction of this provision is that notice must be posted in a common area of the city hall rather than in some office not readily accessible to the public. It would be unreasonable to conclude that the legislature intended that all city halls

remain unlocked after normal business hours. The posting on the kiosk satisfies the requirement of subsection (h) for continuously accessible notice.

The content of the notice is a different matter. The agenda's contemplated action was described as:

48. An Ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297, in Southwest Bexar County for the construction of the Applewhite Water Supply Project.

The four county blocks mentioned in the City's notice contain approximately 8,580 acres. The ordinance authorized only 930.-315 acres to be condemned. Thus, the notice addressed approximately 7,650 acres in excess of the amount of land expected to be condemned. It is thus legally flawed because it does not provide fair notice to the particular property owners whose land the City intended to condemn. In a situation as critical as this, that is, involving the taking of private property for a public purpose, it was incumbent on the City to provide unambiguous notice to the affected property owners. This they did not do, and therefore they failed to comply with the statutory notice standard required by the Open Meetings Act. I acknowledge the difficulty in articulating a clear and easily applicable formula for what constitutes "adequate notice," but, in a condemnation proceeding, notice must at least be sufficiently specific to give fair warning to those particular property owners whose land may be taken. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex. 1990) (public entitled to know what government decides and to observe how and why all decisions are reached); *Cox Enterprises, Inc. v. Board of Trustees,* 706 S.W.2d 956, 960 (Tex.1986) (the Open Meetings Act adequate notice standard demands full disclosure of the subject matter). I further acknowledge that general notice in certain situations, such as utility rate changes within a city, will satisfy the Open Meetings Act's notice requirement. *See Texas Turnpike Auth. v. City of Fort Worth,* 554 S.W.2d 675 (Tex.1977) (general notice suffi-

cient for bond issue to enlarge turnpike); *Lower Col. River Auth. v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975) (utility rate case). However, in situations where the city proposes to condemn land, more specific notice is required. Stating that the expected area of condemnation covers "County Blocks 4180, 4181, 4188, and 4297, in Southwest Bexar County" is not specific enough to satisfy the statute. Therefore, I dissent.

MAUZY, Justice, dissenting.

Because the court allows the Relator, City of San Antonio, to circumvent the statutory requirements of the Open Meetings Act, I dissent. In holding that the notice was sufficient to detail the purpose of the city council's action, the court reasons that "[t]he intended beneficiaries of the Act are not individual citizens, such as the particular landowners affected by the condemnation, but members of the *interested public.*" Maj.Op. at 765 (emphasis added). Who would be more interested than the landowners whose property is the subject of a condemnation discussion? The "interested public" describes those citizens who would be affected by the City's decision to begin condemnation proceedings on their land. The effect of the court's holding is that those who most need the notice of the City's pending action are insured of getting no better notice than those who need it the least. This inequitable result thwarts the clear intent of the Open Meetings Act.

The City initiated the condemnation proceedings based on the following provision contained in the February 15, 1990 council meeting notice:

48. An ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.

Vamarie and the individual condemnees contend that this notice is insufficient as a matter of law because the land to be expropriated by the City was not "fully disclosed" as required by subsection 3A(a) of

the Open Meetings Act. By listing county blocks 4180, 4181, 4188, and 4297, the City encompassed approximately 8,580 acres in its meeting notice. At the February 15, 1990, city council meeting, the City authorized the taking of only 930.315 acres. In reality, the City sought to condemn only about one-ninth of the land it had noticed as being considered for condemnation at the February 15 meeting. Thus, the landowners argue that the City has not fully disclosed the subject matter of the meetings as required by *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d 956, 959–60 (Tex.1986), and that this violates the "exact and literal compliance" standard of *Acker v. Texas Water Commission*, 790 S.W.2d 299, 300 (Tex.1990). The landowners admit that notice does not have to describe the land with the reasonable certainty of a real estate conveyance. However, they insist that the notice must be specific enough to fully disclose the intent of the government at its meeting.

The City contends that, under *Joiner v. City of Dallas*, 380 F.Supp. 754 (N.D.Tex.), *aff'd*, 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637 (1974), there is no constitutional requirement that the City give a more specific notice than was given here. *Joiner*, however, is distinguishable from the present case. In *Joiner*, the plaintiffs raised a federal constitutional challenge to the Texas eminent domain statutes. The district court upheld the constitutional challenge to the statutes. There was no Open Meetings Act challenge to any notice given in the suit. However, the court noted that "some of the defects detected by the plaintiffs might be cured by the Texas Open Meetings Act ... which has guaranteed to all persons access to the deliberations of any government body...." *Id.* at 769 n. 16.

In *Cox*, we held that "less than full disclosure is not substantial compliance." 706 S.W.2d at 960. Full disclosure "requires a correspondence between the likely degree of public interest in a topic and the specificity with which the topic is stated in the notice." *Creedmoor Maha Water Supply Corp. v. Barton Springs–Edwards Aquifer Conservation Dist.*, 784 S.W.2d 79, 86 (Tex.App.—Austin 1989, writ denied). Simply listing a few county block numbers in the southwest part of the county hardly constitutes "full disclosure." Arguably, if this notice did constitute full disclosure, a less descriptive notice that failed even to list the county block numbers would also be sufficient. Openness at every stage of the deliberations of a governmental body is the "command of the statute." *Acker*, 790 S.W.2d at 300. Since we are bound to enforce the will of the legislature, we must hold that this notice does not "fully disclose" the City's intent to condemn the 930.315 acres. Similarly, if the notice is inadequate to rise to the level of substantial compliance with the Open Meetings Act, it certainly cannot meet the "exact and literal compliance" standard of *Acker*, which this court announced just last year. 790 S.W.2d at 300. The city council meeting notice is the only advance notice the landowners would ever receive that their land was the subject of condemnation proceedings by the City. Insufficient notice deprives citizens of the right to be heard at a point in the eminent domain proceedings when their property is being considered for condemnation. Moreover, the City could use the same notice posted in this case to condemn any of the other 7,650 acres in the same county blocks. The Open Meetings Act demands a more narrow and descriptive notice. The Open Meetings Act must ensure "that the public has the opportunity to be informed concerning the transactions of public business." *Acker*, 790 S.W.2d at 300. I strongly disagree with the court's holding that interested people would have "more than sufficient notice" of the condemnation action. Maj.Op. at 765. I would hold that the notice posted by the City was inadequate to fully disclose the City's intent to discuss condemnation proceedings on the 930.315 acres the City sought to condemn at the February 15 city council meeting.

I would also hold that the City's posting of a meeting notice in a kiosk outside of City Hall was in violation of the statutory requirements of the Open Meetings Act. The intent of the Open Meetings Act is to

safeguard the public's interest in knowing the workings of its governmental bodies. *Cox Enters.*, 706 S.W.2d at 960 (Tex.1986). In order to preserve this valuable public interest, we have demanded "exact and literal compliance" with the terms of the Act. *Acker*, 790 S.W.2d at 300 (Tex.1990); *Smith County v. Thornton*, 726 S.W.2d 2, 2–3 (Tex.1986). In *Smith County*, we held that orders issued by the Smith County Commissioners court at meetings on August 24 and 31 were void because the posting of the notices of the commissioners meetings violated subsection 3A(h) of the Open Meetings Act. *Id.* at 3. The notices of the county commissioners meetings were posted on a bulletin board on the first floor of the Smith County Courthouse on the Friday mornings preceding the Monday meetings. However, the courthouse was closed to the public between 8:30 p.m. on Friday and 6:00 a.m. on Monday. *Id.* at 2. We held that, because the courthouse was locked during this period, "... the notice was not posted in a place readily accessible to the general public for at least 72 hours preceding the August 24 and 31 meetings ..." as required in subsection 3A(h). *Id.* at 3.

In the present case, the City argues that it built the kiosk in response to the *Smith County* decision. The City contends that by posting the meeting notice in the kiosk on City Hall grounds, it has achieved a notice that is readily accessible to the general public for at least 72 hours before the scheduled meetings. I do not agree that by posting official notices in an unmarked, unlit kiosk on one side of the City Hall grounds that the City has satisfied the posting requirements of the Open Meetings Act. I would interpret subsections 3A(c) and (h) of the Open Meetings Act as one posting requirement for cities. In *Smith*

*County*, we held that subsections 3A(d) and (h), read together, require that the notice of a county commissioners' meeting posted on a bulletin board in a county courthouse must be readily accessible to the public for at least 72 hours before the scheduled meeting.[1] Logically, this court should now read subsections 3A(c) and (h) together to hold that the notice of a city council meeting posted in the City Hall on a bulletin board must be readily accessible to the public for at least 72 hours before the scheduled meeting. I would only reach subsections 3A(c) and (h) to hold that the City has failed to comply with the Open Meetings Act in this case.

Even if we were to assume that subsections 3A(c) and (h) were not meant to be read as one posting requirement, the City's posting method could not meet the "readily accessible" requirement of subsection 3A(h). The court of appeals held, and the City concedes, that there was no designation that the kiosk was an official posting location for notices of city business. 793 S.W.2d at 752. Additionally, the kiosk is simply not accessible. "Accessible" is defined as being open and available and something that is capable of being used or seen. *Webster's New Collegiate Dictionary* 49 (9th ed. 1989). In argument before this court and evidence adduced at trial, it was shown that the kiosk can only be seen from one side of City Hall, and that the entire kiosk is unlit. A citizen approaching City Hall would have no way of knowing that an official meeting notice would be posted in the kiosk. Additionally, if the citizen went to City Hall at night and was fortunate enough to determine that a notice of an upcoming meeting of the city council was posted in the kiosk, he or she would not be able to read the notice inside the unlit kiosk.[2] Therefore, the City's

1. Subsection (d), which is almost identical to subsection (c), reads as follows:

   A county government body shall have a notice posted on a bulletin board located at a place convenient to the public in the county courthouse.

2. The Court scoffs at the idea that the City should have to accommodate the "nocturnally curious." Maj.Op. at 768. However, the legislature clearly envisioned night accessibility to these types of meeting notices by changing the three day posting requirement in the Open Meetings Act to a continuous 72–hour posting requirement. Act of April 11, 1973, 63rd Leg., R.S., ch. 31, § 3, 1973 Tex.Gen.Laws 45, 48. *See also* W. Weir & C. Weir, *Texas Open Meetings Act* 3 (1990).

kiosk does not meet the definition of "accessible" and could not satisfy the "readily accessible" requirement of the Open Meetings Act.

Furthermore, if we were to interpret subsection 3A(h) to allow a separate posting other than subsection 3A(c), the ability of a governmental unit to post a meeting notice at any readily accessible place could lead to an abuse of the posting requirements of the Open Meetings Act. As the court of appeals reasoned, a governmental body could potentially post a notice in another government building or annex or on a bridge railing or any other public place. 793 S.W.2d at 752 n. 3. I agree with the court of appeals that there is a potential for abuse in allowing a governmental unit to post a notice anywhere that is "readily accessible." [3] To permit a governmental body to post a notice of an upcoming meeting at any unmarked, readily accessible locale would violate the intent of the Open Meetings Act to have openness at every stage of the government's deliberation. *See Acker,* 790 S.W.2d at 300.

In addition to the court's erroneous holding that the posting of the notice was in accordance with the Open Meetings Act, there is a more fundamental and compelling reason for my dissent in this case. Our legislature has made the requirements for posting notice of a meeting of a city government body clear through the passage of subsections 3A(a), (c), and (h). We

are bound by the recent legislature's rejection of an amendment to subsection 3A(c).[4] The legislative history of the attempted amendment specifically mentions the court of appeals' decision in this case as a reason for changing the posting requirements of subsection 3A(c).[5] We have long held that a statute is a creation of the legislature and should an interpretation of the statute by the courts be unacceptable to the legislature, a simple remedy is available to the legislature by the process of legislative amendment. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968). The legislature has refused to substantially change the posting requirements of section 3A since our decision in *Smith County.*[6] It has recently refused to amend the statute to overrule the court of appeals' decision in this very case. When a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction. *Coastal Indus. Water Auth. v. Trinity Portland,* 563 S.W.2d 916, 918 (Tex.1978); *Marmon,* 430 S.W.2d at 187. Through five years of inaction since *Smith County,* and through the recent rejection of the amendment to section 3A, the legislature has indicated its approval to the present posting requirements for government meetings under section 3A. *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866

---

**3.** The Court's suggestion that (h) requires that a notice be posted "not in an obscure or remote location" is simply without any statutory support in section 3A. There is no statutory safeguard to prevent the abuses predicted by the court of appeals.

**4.** The proposed amendment, which passed the House of Representatives but was rejected in the Senate, would have added language to subsection 3A(c) to make it read as follows:

A city government body shall have a notice posted on a bulletin board to be located at a place that is convenient and accessible to the public at all times and is in the city hall *or in front of or adjacent to the city hall, but not more than 50 feet from the building.* (emphasis added).

Tex.H.B. 1599, 72nd Leg., R.S. (1991).

**5.** Recent judicial decisions have concluded that posting of these notices in an office that is closed over the weekend does not suffice for the 72–hour period of accessibility.

House Committee on Urban Affairs, Bill Analysis, Tex.H.B. 1599, 72nd Leg., R.S. (1991) (citing *Smith County v. Thornton,* 726 S.W.2d 2 (Tex. 1986), and *City of Fort Worth v. Groves,* 746 S.W.2d 907 (Tex.App.—Fort Worth 1988, no writ), in addition to *Vamarie, Inc. v. Ball,* 793 S.W.2d 749 (Tex.App.—San Antonio 1990)).

**6.** Even though it has twice amended section 3A since 1986, the requirements for a city or county governmental entity in posting notice of its meetings have remained the same. *See* Act of June 18, 1987, 70th Leg., R.S., ch. 549, § 5, 1987 Tex.Gen.Laws 2211, 2213; Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 15.34, 1989 Tex.Gen. Laws 105.

(Tex.1975); *see also Robinson v. Central Tex. MHMR Center,* 780 S.W.2d 169, 170 n. 4 (Tex.1989); *City of Gladewater v. State,* 138 Tex. 173, 157 S.W.2d 641, 643 (1941); *Love v. Wilcox,* 119 Tex. 256, 28 S.W.2d 515, 524 (1930). Only the legislature can provide the City with the relief it seeks from this court, and it has refused to do so. We cannot attempt now to legislate from the bench in order to achieve what the legislative branch of government has clearly rejected.

In sum, I would deny the City's requested mandamus relief. Since the City has not met the posting requirements of subsections 3A(a), (c), and (h) of the Open Meetings Act, the court of appeals was correct in issuing a writ of mandamus directing the trial court to vacate the orders permitting condemnation and vacate the issuance of the writs of possession.

DOGGETT, Justice, dissenting.

The court proceeds on the erroneous notion that the greater the potential interest of a citizen in a proposed governmental action the less notice that must be provided. It reasons that the notice need not be drafted to attract the attention of those with the greatest interest in attending the meeting. In a declaration reflecting the most peculiar logic, the court writes: "The intended beneficiaries of [this openness] are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public." Maj.Op. at 765.

Today the court retreats from its prior commitment to openness with a pronouncement that notice must be given to the public, but not enough notice so that any individual member can necessarily know what is happening. Requiring that notice be designed only for those who otherwise share little interest in a proposed governmental action defeats the Act's purpose. In *Cox Enterprises, Inc. v. Board of Trustees,* 706 S.W.2d 956, 960 (Tex.1986), we held that the Open Meetings Act "requires a full disclosure of the subject matter of the meetings." "Full and adequate notice," *id.* at 959, involves specifically disclosing the subjects to be discussed in a manner that is reasonably calculated to be informative concerning the public interest. Those with a direct interest in the proceedings are certainly a part of the general public to whom notice should be directed.

The Open Meetings Act is grounded on the principle that democracy thrives when citizens monitor their government's workings and participate in their governance. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990) (finding that both the decisions of governmental officials and the underlying reasoning "must be discussed openly before the public rather than secretly behind closed doors"); Riggs, *The Texas Open Meetings Act: The Tough Questions,* 53 Tex.B.J. 123, 126 (1990) ("The Open Meetings Act ... maintains that a democratic form of government requires an informed electorate."). By concluding that partial notice is sufficient notice, the court strikes a decided new preference for government in the shade rather than in the sunshine.

The court's conclusion that the City was doing so much at one meeting that effective notice of each proposed action would have "overwhelm[ed] readers" and have been "even less informative," Maj.Op. at 766, casts a chilling shadow over the concept of public notice. Apparently today's message is that a busy bureaucracy that generates a long agenda can forget meaningful involvement of the taxpayer who foots the bill for its operation. I reject such elitist thinking and the statutory misconstruction upon which it relies.

Public participation is more likely and the quality of participation is improved if those with the greatest interest in a subject are notified in a meaningful way. Deficient notice can bar the public just as effectively as a bolt on the meeting place door.

I dissent from the retrenchment from

*Acker* and *Cox* that the court now signals.[1]

GAMMAGE, J., joins in this opinion.

---

**1.** Because what was posted was insufficient, it is not necessary to reach the issue of where it was posted.