**HAYS COUNTY WATER PLANNING PARTNERSHIP and Erin Foster, Appellants,**

v.

**HAYS COUNTY, TEXAS, Appellee.**

No. 03–00–00366–CV.

Court of Appeals of Texas, Austin.

Feb. 15, 2001.

Rehearing Overruled March 15, 2001.

Philip Durst, Wiseman, Durst, Tuddenham & Owen, Austin, for appellant.

Jennifer S. Riggs, Hill Gilstrap Adams & Graham, L.L.P., Austin, for appellee.

Before Justices KIDD, YEAKEL and POWERS.*

YEAKEL, Justice.

Appellants Hays County Water Planning Partnership, a political and environmental group of Hays County taxpayers concerned about real estate development in Hays County, and Erin Foster, its chairman, (together "HCWPP") appeal from the district court's summary judgment in favor of appellee, Hays County, Texas. We will reverse the district court's sum-

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1998).

mary judgment and remand the case to that court.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a Hays County Commissioners Court meeting in the fall of 1999. HCWPP describes the atmosphere surrounding development in Hays County at that time as "heated." Hays County describes HCWPP as "aggressive," "disruptive," "vehemently oppose[d] to the 'wrong' kind of development in Hays County," and a body whose members have made "spiteful personal attacks on individual [Hays County C]ommissioners."

Before its October 26, 1999 meeting, the Hays County Commissioners Court posted a meeting agenda. *See* Tex. Gov't Code Ann. § 551.041 (West 1994). Under the general heading "Proclamations & Presentations," the agenda listed item four as "Presentation by Commissioner Russ Molenaar." Molenaar is a Hays County Commissioner. He is described in the record as having "grown tired of being used as a punching bag without an opportunity to speak in defense of his integrity" and he "wished to respond to these repeated accusations [of HCWPP] by offering his individual point of view, by defending himself, as well as county employees and other members of the Commissioners' Court, and by extolling their successes and accomplishments." Molenaar notified Hays County's special counsel regarding the subject matter of his planned presentation. Counsel determined the phrasing of the agenda item for the posted notice.[1]

Molenaar spoke at the meeting. The minutes of the meeting reflect the following heading of Molenaar's presentation: "Presentation by Molenaar regarding Pro-

posed 2026 Transportation Plan" and summarize his comments as follows:

Commissioner Molenaar spoke of being pro-active instead of re-active. He spoke of areas in the county where developers have bought property to be developed. He stated that he had suggested connecting SH45 to FM150 & FM967 because of the possible development in this area and he wanted the developers to help pay for road improvements. He never suggested connecting the proposed roadways to Mopac (Loop 1). He spoke of some of the brochures being distributed that are incorrect and misleading. The object of the plan was to accommodate the CAMPOS plan. Some of the proposed roadways will not happen if development does not occur in the area. He spoke of [the] need to upgrade some of the existing roadways. He wants to be pro-active and not re-active to the situation. The Commissioners' Court has to make tough decisions like this. He stated that he does not do "sweet heart deals" and "backdoor deals". He spoke of statements that our employees, department heads, and elected officials are sorry. He commended those employees, department heads, and elected officials. Some employees [are] leaving because they are being offered more for employment elsewhere. He stated that we have some of the finest elected officials, dept. heads, and employees and they work hard for this county. He spoke of [the] area to be serviced by the proposed LCRA water line. He spoke of meeting with various officials and entities to see what could be done to have quality development. He spoke of conversations with Texas Parks & Wildlife and they indicat-

---

1. Although HCWPP alleges that the posting was "intentionally misleading," there is no evidence in the record indicating an intention on the part of either Molenaar or the commissioners court to deceive members of the public, including HCWPP.

ed that a plan was needed. We have 2 years to get this water into Hays County or it will be gone. (to be run down FM290). He spoke of TNRCC regulations that will allow acreage less than 5 acres. He spoke of the court working on creating greenbelt areas in new developments. He spoke of efforts to get water service to subdivisions in the Dripping Springs area. He spoke of [the] number of roads that were improved for $20 million with 75% of the road projects completed. He spoke of his commitment to pave the roads in his precinct.

No questions were asked of Molenaar and no discussion of the issues brought up by Molenaar appears to have taken place. No formal action was taken at the meeting regarding development or roadways in Hays County. The record is silent as to whether action was taken at any later meeting of the commissioners court.

HCWPP sued Hays County for mandamus, injunctive, and declaratory relief for violations of the Texas Open Meetings Act.[2] *See* Tex.Gov't Code Ann. §§ 551.041, .141, .142 (West 1994); Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (West 1997 & Supp.2001). Both sides filed motions for summary judgment. The district court granted Hays County's motion and denied HCWPP's.

By one issue, HCWPP appeals the district court's summary judgment on the grounds that Hays County's notice failed to satisfy the Open Meetings Act, and no exception to the act covers Molenaar's presentation nor does the First Amendment provide such an exception. *See* U.S. Const. amend. I.

## DISCUSSION

### Standing

▮ Hays County initially responds to HCWPP's appeal by arguing that HCWPP lacks standing to sue under the Open Meetings Act. Although the Open Meetings Act allows an "interested person" to bring an action to correct a violation of the act, *see* Tex.Gov't Code Ann. § 551.142(a), Hays County contends that HCWPP failed to present any evidence that its members were affected other than as members of the general public. *See City of Abilene v. Shackelford*, 572 S.W.2d 742, 745–46 (Tex. Civ.App.—Eastland 1978), *rev'd on other grounds*, 585 S.W.2d 665 (Tex.1979). In keeping with the purpose of the act, standing under the Open Meetings Act is interpreted broadly. *See Cox Enters., Inc. v. Board of Trustees of the Austin ISD*, 706 S.W.2d 956, 960 (Tex.1986); *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 162 (Tex.App.—Austin 1996, orig. proceeding [leave overruled]); *City of Fort Worth v. Groves*, 746 S.W.2d 907, 912–13 (Tex.App.—Fort Worth 1988, no writ); *Cameron County Good Gov't League v. Ramon*, 619 S.W.2d 224, 230–31 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.).

This Court addressed the issue of standing for Open Meetings Act purposes in *Save Our Springs*, holding that both an alliance of interested citizens and one individual living in the affected area had standing under the Open Meetings Act. *Save Our Springs*, 934 S.W.2d at 163. We rejected a claim similar to that now made by Hays County—that the individual did not have standing because she failed to show how she was affected differently from other citizens—because "the interest

2. HCWPP's suit also complains of Open Meetings Act violations in connection with an ear- lier meeting. HCWPP only appeals the ruling on the October 26 meeting.

protected by the Open Meetings Act *is* the interest of the general public." *Id.*

HCWPP states that it "is a non-profit group of interested citizens dedicated to protecting water quality and the quality of life in and around Hays County. Individual members of HCWPP live in Hays County, enjoy the natural resources of the region, and are adversely affected by defendant's conduct." There is no evidence to the contrary. We see no difference between HCWPP and the citizens organization in *Save Our Springs. See id.*

Hays County argues that the standard for associational standing articulated in *Texas Ass'n of Business v. Texas Air Control Board*, 852 S.W.2d 440, 447 (Tex.1993), should be applied to standing under the Open Meetings Act. *Texas Ass'n of Business* involved a declaratory-judgment action brought by an association on behalf of its members. The supreme court held that the following requirements must be satisfied for a group to have standing to sue: (1) its members have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 447–48 (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), and incorporating standing analysis adopted in *Board of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (1955)). HCWPP satisfies those requirements.

We hold that HCWPP has standing to bring this suit alleging Open Meetings Act violations by the Hays County Commissioners Court.

### Texas Open Meetings Act

In their motions for summary judgment, both HCWPP and Hays County asserted a right to judgment as a matter of law. Because the propriety of summary judgment in this case is a question of law, we review the trial court's decision *de novo. See McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex.App.—Austin 1999, no pet.); *Rylander v. 3 Beall Bros. 3, Inc.*, 2 S.W.3d 562, 566 (Tex.App.—Austin 1999, pet. denied). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment proof presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). If we find error, we must render the judgment the trial court should have rendered. *Id.*

HCWPP contends Hays County violated the Open Meetings Act. Statutory construction is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). The resolution of an issue of statutory construction must begin with an analysis of the statute. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). If the disputed statute is clear and unambiguous, courts should give the statute its common meaning. *Id.*

### A. Adequate Notice

The Open Meetings Act was enacted in 1967 for the purpose of "assuring that the public has the opportunity to be informed concerning the transactions of public business." Act of May 8, 1967, 60th Leg., R.S., ch. 271, § 7, 1967 Tex.Gen. Laws 597, 598. The Open Meetings Act requires that governmental bodies give written notice of the subject of each meeting held. Tex.Gov't Code Ann. § 551.041. HCWPP claims the posting, "Presentation by Commissioner Russ Molenaar," was "insufficient to provide full and adequate notice of the subject matter to be discussed" at the meeting and was but a "vague agenda item," inadequate in notify-

ing the public of the "very detailed consideration of the precise roads and infrastructure that [Commissioner Molenaar] wanted to see constructed to permit real estate development in Hays County, which was and is a very important issue in the county."

The Open Meetings Act states that a "governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." *Id.* The supreme court has previously dealt with the Open Meetings Act's notice requirements.[3] *E.g., City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762 (Tex.1991); *Cox Enters.,* 706 S.W.2d 956; *Texas Turnpike Auth. v. City of Fort Worth,* 554 S.W.2d 675 (Tex.1977); *Lower Colo. River Auth. v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975). A brief summary of these decisions is helpful.

In *Lower Colorado River Authority,* the challenged notice stated that the board of directors of the Lower Colorado River Authority would consider "the ratification of the prior action of the Board taken on October 19, 1972, in response to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas." *Lower Colo. River Auth.,* 523 S.W.2d at 646. Conceding the notice was "not as clear as it might be," the court nevertheless held that the notice was adequate because "it would alert a reader to the fact that some action would be considered with respect to charges for electric power sold in San Marcos." *Id.*

Two years later, in *Texas Turnpike Authority,* the court considered the notice for a meeting of the board of directors of the Texas Turnpike Authority at which a resolution was passed to enlarge the Dallas–Fort Worth Turnpike. *Texas Turnpike Auth.,* 554 S.W.2d at 676. The notice stat-

ed the board would "[c]onsider request . . . to determine feasibility of a bond issue to expand and enlarge the Dallas Fort Worth Turnpike." *Id.* The City asserted the notice should have stated that this course of action was contrary to the board's prior declaration of its intention to make the Turnpike a free road. The court upheld the notice, pointing out that "[t]here is no necessity to post copies of proposed resolutions or to state all of the consequences which may necessarily flow from the consideration of the subject stated." *Id.*

In *Cox Enterprises,* the board of trustees of a school district posted notices of their closed executive sessions that listed only general topics such as "personnel," "litigation," and "real estate matters." *Cox Enters.,* 706 S.W.2d at 957. The court concluded that the "advance notice given under [the Open Meetings Act] should specifically disclose the subjects to be considered at the upcoming meeting." *Id.* at 959. The court held that the board "did not provide full and adequate notice, particularly where the subject slated for discussion was one of special interest to the public." *Id.*

In *City of San Antonio,* a citizen challenged the city's condemnation of his land on the grounds that the city's posting did not describe the particular land to be condemned. The notice posted prior to the city council meeting stated that the city would address an ordinance "determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project." The court held the city "could have given more particularized notice," but this notice was "sufficient to ensure that a reader was

---

**3.** Though the Open Meetings Act has been modified, its notice provisions have not substantively changed. We will refer to the current statute for convenience.

given adequate notice of the proposed governmental action." *City of San Antonio,* 820 S.W.2d at 765–66.

Given the supreme court's treatment of advance notice to the public of the issues to be addressed or presented by a governmental body, Hays County's notice is inadequate. The notices that the supreme court held to be sufficiently descriptive alerted readers to the particular issue the governing bodies would address—changes in electric power rates, the enlargement of the Dallas–Fort Worth Turnpike, and condemnation of land located in a specific area of Bexar County. Indeed, even the notice that the supreme court held to be inadequate was more descriptive than the one at issue here; "personnel," "litigation," and "real estate matters" as broad topics to be discussed are more specific than Molenaar's "presentation." "Presentation" is a vague description. There is nothing in the posting that would give a resident of Hays County any inkling of the *substance* of Molenaar's proposed presentation.

Although the court held in *City of San Antonio* that the notice at issue was "insufficient to inform the individual landowners that their particular tracts of land were the subject of the proposed condemnation ordinance," it was adequate to achieve the act's "core purposes." *Id.* "The intended beneficiaries of the [Open Meetings] Act are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public. If a 'reader' is given notice, the requirement of the Act is satisfied and its purpose served." *Id.* Again, the county's use of "presentation" fails to inform a reader as a member of the interested public, not just HCWPP, of the topics to be addressed by Molenaar.

Furthermore, Molenaar's presentation was noticed for and did occur during the "Proclamations & Presentations" portion of the meeting. The other matters noticed for this segment of the meeting were mere formalities—New Employee Introductions, Employee Recognition, and the Declaration of Red Ribbon Week in the county. The juxtaposition of Molenaar's presentation with these items gives no indication to any reader that Molenaar would make comments about substantive policy issues of great importance to the county. *See id.* at 765.

Finally, we find instructive a recent opinion of the attorney general concerning notice. *See* Op.Tex.Att'y Gen. No. JC–0169 (2000). The opinion request asked "whether a governmental body may permit members of the public to offer comments at public meetings regarding matters not specified in the posted meeting notice." *Id.* The attorney general concluded that "public comment" as a broad designation for an open session of unsolicited citizen comments and questions satisfied the Open Meetings Act so long as the governmental body did not know in advance the content of the comments. *Id.* "We caution that the use of 'public comment' or similar term will not provide adequate notice if the governmental body is, prior to the meeting aware, or reasonably should have been aware, of specific topics to be raised." *Id.* (citing *Cox Enters.,* 706 S.W.2d 956). In addition, the relationship the governmental body has with its employees differs from the relationship it has with citizens; "it knows or can learn in advance the subject matter of reports or briefings by employees, consultants, [or] auditors.... Thus, there are no particular difficulties in providing notice of the subject matter of such presentations." Op.Tex.Att'y Gen. No. JC–0169. Certainly, the same may be said of comments by members of the governmental body itself.

The attorney general's comments are persuasive. The commissioners court was

surely aware of the contents of Molenaar's presentation before the agenda for the October 26 meeting was prepared; therefore, the posting could and should have identified in more detail the topics that Molenaar would address. We hold that the notice provided by Hays County was insufficient to satisfy the Open Meetings Act.

## B. Statutory Exception

Hays County argues that Molenaar's presentation was exempted from the Open Meetings Act notice requirements. *See* Tex.Gov't Code Ann. § 551.042 (West 1994). The county contends that section 551.042 "acknowledges that public comments will arise at meetings, and provides that notice is not required so long as the governmental body does no more than recite existing fact or policy." Section 551.042 provides:

(a) If, at a meeting of a governmental body, *a member of the public or of the governmental body inquires* about a subject for which notice has not been given as required by this subchapter, the notice provisions of this subchapter do not apply to:

(1) a statement of specific factual information given in response to the inquiry; or

(2) a recitation of existing policy in response to the inquiry.

*Id.* (emphasis added).

■ There is a broad scope to the coverage of the Open Meetings Act and a narrowness to its few exceptions. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990). Section 551.042 is clear and unambiguous and relates to "inquiries" from members of the public or the governmental body. Tex.Gov't Code Ann. § 551.042; *see also* Op.Tex.Att'y Gen. No. JC–0169. Its purpose is to authorize a governmental body to make a limited response to an inquiry about a subject not included in the posted notice while preventing "deliberation" or making a "decision" about the subject matter of the inquiry. *See* Op.Tex.Att'y Gen. No. JC–0169. Molenaar was not responding to an inquiry by either a member of the public or a colleague on the commissioners court. We hold that section 551.042 does not exempt Molenaar's presentation from the requirements of the Open Meetings Act.

## C. Free Speech

■ Hays County seeks to avoid the Open Meetings Act's requirements by asserting that Molenaar's speech was protected by the First Amendment. *See* U.S. Const. amend. I. The First Amendment prohibits government from "abridging the freedom of speech." *Id.* The district court, in stating the reasons for his judgment, found that "the subject matter of Commissioner Molenaar's 'presentation' was a matter of public concern. As such it is protected First Amendment speech." In reaching such conclusion, the district court relied on *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Kirkland v. Northside Independent School District,* 890 F.2d 794, 798 (5th Cir.1989). Hays County, citing *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), additionally posits, "An elected official does not give up his right to free speech merely by virtue of his office." Although we do not find such broad language in *Pickering,* we have no quarrel with either the district court's or Hays County's worry that the constitutional right of an elected official, as a private citizen, to speak out on matters of public concern not be abridged.

However, we see no restriction of the right of free speech by the necessity of a public official's compliance with the Open Meetings Act when the official seeks to

exercise that right at a meeting of the public body of which he is a member. The meeting agenda reflected there would be a presentation by *Commissioner* Molenaar during the proclamations-and-presentations portion of the meeting. Molenaar was not scheduled and did not make his presentation during the period of the meeting set aside for "Public Comments," a time when "*3-minute* comments will be taken from the audience." Molenaar's remarks, as summarized in the minutes of the meeting, addressed the responsibilities and efforts of the Hays County Commissioners Court, of which he is a member, with regard to growth, transportation, and water issues.

*Connick* and *Pickering* both involved situations where an employee of a governmental body was discharged for speaking against his employer. *See Connick,* 461 U.S. at 141, 103 S.Ct. 1684; *Pickering,* 391 U.S. at 564, 88 S.Ct. 1731. In *Kirkland,* a teacher's contract was not renewed because he taught from a reading list other than that provided by his school. *See Kirkland,* 890 F.2d at 795. These cases are distinguishable from the one before this Court. This case does not involve an employment decision. Molenaar is not an employee of the commissioners court; he is an elected county commissioner. He suffered no sanction or penalty by virtue of his speech and would have suffered none had the agenda fully disclosed the topics on which he would speak. The Open Meetings Act may not, and does not, restrict or abridge protected speech. The problem with Molenaar's remarks is not that he could not make them at all, but rather the location and timing of his comments.

That Molenaar addressed matters of public concern is without dispute. However, to the extent that *Connick, Pickering,* and *Kirkland* may apply to elected officials

as opposed to government employees, we hold that the cases are inapplicable because, in the context in which they were made, Molenaar's remarks were not those of a private citizen but of an elected official. In these circumstances, requiring compliance with the Open Meetings Act does not violate the First Amendment.

### Relief

■ Hays County contends HCWPP has not alleged a cause of action upon which relief can be granted because Molenaar's presentation "was not a deliberation or act of the Commissioner's Court, and no action was taken under this posted item that can be undone." The county further reasons, "If no action is taken at a meeting that violates the [Open Meetings A]ct, there is nothing to render void. If there is no threatened future violation or established pattern of violations, there is nothing to enjoin." Following Molenaar's remarks, no questions were asked by the public attendees of the meeting, and the other commissioners did not discuss, debate, question, comment on, or take action as a result of the presentation. HCWPP does not allege that the commissioners court took any action as a consequence of Molenaar's presentation.

HCWPP filed suit against Hays County seeking "appropriate mandamus, injunctive, and/or declaratory relief, requiring that any and all improperly posted and/or illegal discussions, deliberations, and/or actions taken at the October 26, 1999, meeting of [the Hays County] Commissioners' Court be declared void, made properly public and open, and/or requiring the disclosure to the public of all discussions or deliberations of this item at a properly convened public meeting." HCWPP also seeks attorney's fees, costs, pre- and post-judgment interest, and any additional relief deemed proper by the district court. Because the district court ruled in favor of

Hays County, the court conducted no hearing on the relief that might be available to HCWPP.[4]

The Open Meetings Act provides that actions taken by a governmental body in violation of the act are voidable. Tex. Gov't Code Ann. § 551.141. The act also provides for mandamus or injunctive relief "to stop, prevent, or reverse a violation or threatened violation of [the act] by members of a governmental body." *Id.* § 551.142(a).[5] The act "is intended to safeguard the public's interest in knowing the workings of its governmental bodies." *Cox Enters.,* 706 S.W.2d at 960.

Hays County's argument—essentially "no harm; no foul"—is facially tempting. In its support, the county directs us to *Hill v. Palestine Independent School District,* No. 12–00–101–CV, slip op. (Tex.App.—Tyler Nov. 22, 2000, pet. filed), *Markowski v. City of Marlin,* 940 S.W.2d 720 (Tex. App.—Waco 1997, writ denied), and *United Independent School District v. Gonzalez,* 911 S.W.2d 118 (Tex.App.—San Antonio 1995), *writ denied,* 940 S.W.2d 593 (Tex.1996) (per curiam). Although also factually distinguishable from the present case, neither *Hill, Markowski,* nor *Gonzalez* address the remedies potentially available to a successful plaintiff set forth in section 551.142. *See* Tex.Gov't Code Ann. § 551.142. It is not enough to say that because the commissioners court took no action following Molenaar's presentation, there has been no harm to the public, and the district court cannot, therefore, order a remedial remedy. Such a holding would ignore the public's interest as expressed by the supreme court in *Cox Enterprises. See Cox Enters.,* 706 S.W.2d at 960. Therefore, we decline to hold as a matter of law that there is no remedy available to HCWPP.

The district court, having ruled that Hays County did not violate the Open Meetings Act, did not consider what, if any, remedy might be available to HCWPP. We will remand this case to the district court for further proceedings in this regard. In so doing, we express no opinion concerning the relief to which HCWPP may be entitled.

## CONCLUSION

We hold that Hays County did violate the Open Meetings Act in its posting prior to its October 26, 1999 meeting and thus sustain HCWPP's issue and remand this cause to the district court for further proceedings not inconsistent with this opinion.

---

**4.** The district court, however, specifically refused to award attorney's fees to either party.

**5.** The Open Meetings Act also provides for penalties that are inapplicable here. *See* Tex. Gov't Code Ann. §§ 551.143–.146 (West 1994 & Supp.2001).