TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-02-00289-CV







City of San Angelo, Texas and Menard County Water Control and

Improvement District No. 1, Appellants


v.


Texas Natural Resource Conservation Commission, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. GV2-01207, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING






 This case involves an Open Meetings Act challenge to the December 5, 2001, meeting
of the Texas Natural Resource Conservation Commission ("the Commission"). (1) Appellants City of
San Angelo and Menard County Water Control and Improvement District No. 1 appeal the trial
court's denial of their request for mandamus, refusal to grant an injunction, and finding that the
Commission provided adequate notice to the public pursuant to the Open Meetings Act. See Tex.
Gov't Code Ann. §§ 551.001-.146 (West 1994 & Supp. 2002). Appellants contend that the
Commission's posted agenda violated the notice requirements of the Open Meetings Act because
it was both vague and insufficient. Therefore, they argue, the trial court erred in not enjoining the
Commission from acting under the interim orders adopted at the meeting. Because the agenda items
were sufficiently specific to satisfy the Open Meeting Act's notice requirements, we will affirm the
trial court's judgment.


BACKGROUND This dispute arises from a series of petitions requesting that the Commission appoint
watermasters for the San Saba River and the Concho River Basin. (2) Chapter 11 of the Water Code
allows the Commission to appoint a "watermaster." Tex. Water Code Ann. § 11.452 (West 1994). 
A watermaster is a Commission employee who administers and enforces water right decisions in a
given geographic area. See Tex. Water Code Ann. §§ 11.325, 11.333 (West 1994). The
Commission can appoint a watermaster on either the petition of twenty-five or more holders of water
rights in an area, or on its own motion. Tex. Water Code Ann. §11.451 (West 1994). Upon
receiving a petition, the Commission must hold an evidentiary hearing to determine if a threat exists
to the rights of senior water right holders in the river basin sufficient to require the Commission to
appoint a watermaster. Tex. Water Code Ann. § 11.452(a), (c).

 Instead of conducting this evidentiary hearing during a full commission meeting, the
Commission may refer the matter to the Natural Resource Conservation Division of the State Office
of Administrative Hearings ("SOAH"). Tex. Gov't Code Ann. § 2003.047 (West 2000). In the
instant case, however, before referring the filed petitions for an evidentiary hearing, the Commission
chose to address in an open meeting whether domestic and livestock water users were water right
holders for purposes of signing a petition requesting the appointment of a watermaster. (3) The
executive director of the Commission filed a letter with the Commission's Office of Chief Clerk
requesting that the Commission consider four legal issues regarding the filed petitions before sending
the fact issues to SOAH for evidentiary hearings:


1. Are persons who take and use state water without a permit for domestic and
livestock use (d&ls) included in the designation in Tex. Water Code § 11.452(b)
as "persons who hold water rights in the river basin or segment of the river
basin" who may therefore present evidence at the hearing?


2. Are d&ls "senior water right holders" under Tex. Water Code §§ 11.451 and
11.452(c)?


3. Are d&ls "holders of water rights" under Tex. Water Code § 11.329 who may
be assessed fees to pay for the watermaster?


4. For the San Saba petition, are d&ls "holders of water rights" under Tex. Water
Code § 11.451 who may petition for a watermaster?



 The Commission sent a copy of the executive director's letter to the persons most
directly affected, including all petitioners and paper water right holders for both rivers. Appellants
are governmental entities charged with authority and responsibility for water-related matters, and
therefore received a copy. The letter stated that the Commission intended to consider the executive
director's legal issues and consider the executive director's request to send the petitions to SOAH
for an evidentiary hearing at the next meeting. (4) The letter also described the petitions the
Commission had received and catalogued whether the signatories of the petitions were water right
holders or domestic and livestock water users. Most importantly, the recipients were invited to
submit legal briefs on the four legal issues prior to the meeting. The City of San Angelo chose to
respond to the letter by submitting a brief addressing the four issues.

 Having provided exhaustive notice to the specially interested parties, the Commission
also provided notice to the general public that it intended to address these petitions for watermaster
appointment and the related legal issues at its next meeting. Before the December 5 meeting, the
Commission delivered its agenda to the Secretary of State, who published it in the November 26
Texas Register pursuant to the statutory notice requirements. See Tex. Gov't Code Ann. §§ 551.044,
.048 (West Supp. 2002). The agenda included the following paragraphs:


Item 1. Docket No. 2000-0344-WR. Consideration of the four legal issues raised by
the Executive Director with regard to the petitions for a watermaster for the Concho
River and its tributaries under Texas Water Code ch. 11. These legal issues concern
whether domestic and livestock users on the Concho River and its tributaries are
"water right holders" and "senior water right holders." The Concho River and its
tributaries cover Irion, Tom Green, Concho, Runnels, Coke, Schleicher, and Sterling
Counties.


Item 2. Docket No. 2001-0993-WR. Consideration of the four legal issues raised by
the Executive Director with regard to the petitions for a watermaster for the San Saba
River and its tributaries under Texas Water Code ch. 11. These legal issues concern
whether domestic and livestock users on the Concho River [sic] and its tributaries
and "water right holders" and "senior water right holders." The San Saba River and
its tributaries cover Schleicher, Menard, McCulloch, Sutton, Mason, and San Saba
Counties. (5)



 On December 10, 2001, the Commission issued two interim orders reflecting the
actions taken at the December 5 meeting. The interim order regarding the Concho River Basin read:


(1) the petitions were filed by 25 or more water right holders on the Concho River;


(2) domestic and livestock users are affected persons who may participate in and
present evidence at a hearing on the petitions; 


(3) there is no statutory authority to require the payment of fees by domestic and
livestock users for watermaster operations; and


(4) the petitions are referred to SOAH for a hearing on whether the rights of senior
water rights holders in the basin or segment of the basin are threatened. (6)

 


 Appellants filed suit seeking both mandamus and injunction in the Travis County
District Court, complaining that the interim orders manifested a violation of the Open Meetings Act
because the agenda for the meeting at which they were adopted failed to put the public on notice that
the Commission would "take action." The trial court, finding that the notice satisfied the Open
Meetings Act requirements, denied appellants relief. Appellants argue that the trial court erred in
determining that the Commission's notice to the public was sufficient. They contend that the notice
was inadequate when read in light of the Commission's interim orders. The Commission counters
that the agenda items adequately described the "subject" of the meeting as the Open Meetings Act
requires and, therefore, that the interim orders were within the scope of their notice.


DISCUSSION

 Because the content of the notice is undisputed, determining its adequacy is a question
of law. Rettberg v. Texas Dep't of Health, 873 S.W.2d 408, 413 (Tex. App.--Austin 1994, no writ). 
In reviewing notices under the Open Meetings Act, we must determine if the notice was sufficiently
specific to alert the general public to the topic to be considered. City of San Antonio v. Fourth Court
of Appeals, 820 S.W.2d 762, 765 (Tex. 1991). Appellants argue that: (1) because "consideration"
does not mean "action" these agenda items did not give notice of the possibility that the Commission
would take action; and (2) the Commission gave a narrow and restricted notice which failed to fairly
identify the substance of the four legal issues--therefore, the subject-matter of the meeting was
limited to those issues. We disagree. We will first consider whether the Commission's actions
exceeded the notice given.

 Appellants first challenge the agenda items' descriptions of the action the
Commission would take at the meeting; in essence, they challenge the use of the verb "to consider." 
The Open Meetings Act requires that the Commission give "written notice of the date, hour, place,
and subject of each meeting held." Tex. Gov't Code Ann. § 551.041 (West 1994). Most cases
addressing the statutory notice requirement concern whether the subject-matter of a meeting has been
adequately identified. See, e.g., Cox Enter., Inc. v. Board of Tr. of the Austin Indep, Sch. Dist., 706
S.W.2d 956 (Tex. 1986) (the "Open Meetings Act requires a full disclosure of the subject matter of
the meetings"); Hays County Water Planning P'ship v. Hays County, 41 S.W.3d 174, 180 (Tex.
App.--Austin 2001, pet. denied) (holding that notice must convey substance of meeting); Friends
of Canyon Lake, Inc. v. Guadalupe-Blanco River, No. 03-02-00221-CV, slip op. at 8, 2002 Tex.
App. LEXIS 7756, at *29 (Tex. App.--Austin Oct. 31, 2002, no pet. h.) (holding notice sufficient
even though agenda description "might not inform the casual reader of the precise consequences"). 
When the notice specifically discloses the subject to be considered at the upcoming meeting, the
statute's notice requirement is met and the described meeting is considered an open meeting where
the Commission can take final action, decide, or vote on a matter. See Cox Enter., 706 S.W.2d at
959; Tex. Gov't Code Ann. § 551.102 (West 1994).

 The Texas Supreme Court has addressed the extent to which a governmental entity
must specify the type of action it will take in an open meeting in Texas Turnpike Authority v. City
of Fort Worth, 554 S.W.2d 675, 676 (Tex. 1977). Texas Turnpike involved a challenged notice
which stated that the Texas Turnpike Authority would "consider a request . . . to determine
feasibility of a bond issue to expand and enlarge the Dallas-Fort Worth Turnpike." Id. (emphasis
added). After "considering" the request, the Authority authorized a feasibility study and expended
funds for the study. The City sued to enjoin the study and expenditure of funds, claiming that the
notice should have stated that the board was reversing its prior declaration that the turnpike would
be a toll-free road. The court rejected this argument, pointing out that it was not necessary "to state
all of the consequences which may necessarily flow from the consideration of the subject stated." 
Id. Initiating the feasibility study was a probable consequence of considering the request; the court
allowed the Turnpike Authority to proceed with its study although its agenda had only provided that
it would "consider a request." (7) Id.

 Appellants make a similar argument that by using the word "consideration" in its
agenda, the Commission has constrained its ability to act. Appellants read the word "consideration"
to preclude the possibility of "action"; they would require the Commission's agenda to have included
a specific statement that the Commission would "take action" during the December 5 meeting. We
do not read "consideration" so narrowly. "Consideration" necessarily encompasses "action." The
word "consideration" alone was sufficient to put the general public on notice that the Commission
might act during the meeting. As in Texas Turnpike, the question is not whether the Commission
has detailed all possible outcomes of addressing a particular topic, but whether the public is notified
that the topic will be part of the meeting. The Open Meetings Act does not require the Commission
to list the precise consequences of the consideration of a topic. Friends of Canyon Lake, slip op. at
8, 2002 Tex. App. LEXIS 7756, at *29. We hold, then, that the Commission did not have to include
additional language indicating that it might act on issues under consideration. Next, we address
whether the agenda is specific enough to alert a reader to the subject-matter of the meeting.

 Appellants argue that the Commission considered and acted upon issues at the
meeting that were outside the scope of the subject-matter referenced in the agenda. They contend
that the agenda only gives notice that the meeting would address four legal issues raised by the
executive director and that the Commission considered and decided other, more general issues with
regard to the watermaster petitions. In reviewing notices under the Open Meetings Act, we must
ensure that the notice fulfills the act's primary purposes of enabling public access to and increasing
public knowledge of government decision-making. City of San Antonio, 820 S.W.2d at 765. The
Open Meetings Act "safeguard[s] the public's interest in knowing the workings of its governmental
bodies." Cox Enter., 706 S.W.2d at 960. The Act's intent is to give the public opportunity to inform
itself of the topic of each given meeting. Rettberg, 873 S.W.2d at 411. The notice has to be
sufficiently descriptive to alert readers to the particular issue the governing body will address. Hays
County, 41 S.W.3d at 180.

 Appellants argue that: (1) the notice was not sufficient because it did not adequately
describe the legal issues the Commission would consider and (2) the notice did not indicate the
Commission would consider the ultimate validity of the petitions. (8) They contend that the
Commission's agenda only provided a vague description of an intent to consider unspecified legal
issues. Appellants argue that the Commission could have provided notice that it would consider the
watermaster petitions generally, but instead it narrowed its subject matter to just the legal issues
surrounding the petitions. Because of its specificity, appellants argue that the agenda did not give
notice that the Commission would consider the watermaster petitions generally. We do not read the
agenda's description so narrowly.

 Our inquiry into the sufficiency of notice is whether a reader was alerted to the
substance of the proposed meeting. See Hays County, 41 S.W.3d at 180. The agenda informs
readers that for the Concho and San Saba River: (1) petitions for watermaster had been filed; (2) the
executive director had raised four legal issues regarding these petitions; (3) these legal issues were
governed by chapter 11 of the Water Code; (4) the legal issues concerned whether domestic and
livestock water users were "water right holders" and "senior water right holders;" and (5) the rivers
and tributaries covered by the petitions. Appellants argue that the agenda was restricted to: 
"consideration of four legal issues raised by the Executive Director." However, the agenda's
description of the topic does not end with this phrase, but instead continues: "with regard to the
petitions for a watermaster." Read in its entirety, the agenda sufficiently notifies an interested reader
that the Commission would be considering issues related generically to the watermaster petitions at
the December 5 meeting.

 Although the agenda could have been less specific, its specificity does not make the
notice less informative than if the Commission had omitted the additional descriptions. As the
supreme court recognized in City of San Antonio, there can be situations where the degree of
specificity "would so overwhelm readers that it would prove even less informative" than a general
notice; the present agenda items do not reach that point. City of San Antonio, 820 S.W.2d at 766. 
Therefore, we hold that the agenda items were sufficiently descriptive to inform a reader of the broad
topics to be addressed at the meeting and that it was not necessary for the agenda to enumerate the
legal issues in the public agenda as it had done in the mailed notices.

 Appellants attempt to bolster their challenge to the description of the meeting's
subject-matter by arguing that, because it referred the petitions to SOAH for a hearing, the
Commission is now precluded from arguing that the petitions were not sufficient to warrant a hearing
on the merits. In challenging the interim orders specifically, appellants would confer on the
Commission's decision to refer to SOAH its questions regarding the watermaster petitions the
binding legal effect of a final agency action. We disagree with this assessment. An evidentiary
hearing before SOAH is a means for determining the underlying facts in an administrative dispute
while protecting the rights of all parties. The administrative law judge may consider any issue he
determines material and supported by evidence; he can revisit any issue provisionally resolved by
the Commission. Tex. Gov't Code Ann. § 2003.047(e), (f)(1)-(2). In referring the question, the
Commission actually afforded appellants' interests greater procedural protection.

 Because we hold that the agenda was sufficient, we overrule appellants' issue.


CONCLUSION


 Having overruled appellants' issues, we hold that the notice for the December 5,
2001, meeting was sufficient to meet the requirements of the Open Meetings Act. Accordingly, we
affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: December 5, 2002

Publish 

1. By statute effective September 1, 2001, the legislature changed the name of the Texas
Natural Resource Conservation Commission to the Texas Commission on Environmental Quality,
to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for
phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform
any act authorized by law under either title. See Act of April 20, 2001, 77th Leg., R.S., ch. 965,
§ 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name,
while continuing to recognize the former. Because the parties have referred to the agency as the
Commission in the briefs and at oral argument, we will as well in this opinion. 
2. The Commission received three petitions for appointment of a watermaster on the Concho
River and assigned them Docket No. 2000-0344-WR. The first petition was signed primarily by
persons claiming to be domestic and livestock water users. The second petition was signed by 
thirty-four individuals who were paper water right holders. The third petition was signed by three
paper right holders and approximately 104 persons claiming to be domestic and livestock water
users. The Commission also received a petition concerning the San Saba River and assigned it
Docket No. 2001-0993-WR. This petition was signed by twelve individuals who were paper water
right holders and forty-three who were domestic and livestock water users. 
3. Because both water right holders and domestic and livestock users of water diverted from
Texas streams signed these petitions, the petitions' validity depended on whether the water code
recognizes the domestic and livestock water users as water right holders. The Commission can issue
to persons written water rights (permits or certificates of adjudication). These persons are then
classified as "paper water right holders." See Tex. Water Code Ann. §§ 11.121-.186 (West 1994). 
By contrast, domestic and livestock water users claim rights to use state water for domestic and
livestock purposes based on either a statutory exemption or common law right. See Tex. Water Code
Ann. § 11.142 (West 1994). 
4. The Commission intended to discuss the petitions on October 10, but, because of time
constraints, delayed consideration until the December 5 meeting. The agenda for the December 5
meeting constituted the second time the identical agenda notices were published. 
5. The second agenda item initially addresses the Commission's intent to consider the San
Saba petition. In the second of three mentions of the river in question, however, the word "Concho"
was inadvertently substituted for "San Saba." Despite this clerical error, it is clear that, read
together, the two agenda items indicate that the same issues were to be discussed regarding both river
areas.
6. The interim order concerning the San Saba River is substantially similar to the Concho
River Basin interim order. However, the Commission did not decide whether the petition had been
filed by twenty-five or more water right holders. Rather, the Commission ordered that "the petition
merits a hearing at SOAH." 
7. Appellants argue that Texas Turnpike is no longer the law. We disagree. Although we now
apply a literal compliance standard under the Open Meetings Act, the principle established in Texas
Turnpike regarding the necessity of giving notice of all of a meeting's potential consequences is still
consistently applied. See Cox Enter., Inc. v. Board of Tr. of the Austin Indep, Sch. Dist., 706 S.W.2d
956, 958 (Tex. 1986); Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River, No. 03-02-00221-CV, slip op. at 7, 2002 Tex. App. LEXIS 7756, at *25 (Tex. App.--Austin Oct. 31, 2002, no pet.
h.).
8. We note that each appellant was given specific notice regarding all pertinent issues; the
City of San Angelo even accepted the opportunity to brief these issues before attending the meeting. 
Appellants now complain that the public did not receive specific notice. See City of San Antonio v.
Fourth Court of Appeals, 820 S.W.2d 762, 765 (Tex. 1991) (holding that tailored notice is not
required for individuals with specific interest in proposed action, only general notice to the public).